IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| TERRY W. HICKMAN | ) | |
| | ) | |
| v. | ) | No. 1:07-0085 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |


To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to

obtain judicial review of the final decision of the Social Security Administration ("SSA" or

"the Administration"), through its Commissioner, denying plaintiff's applications for

disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided

under Titles II and XVI of the Social Security Act ("the Act").  The case is currently pending

on plaintiff's motion for judgment on the administrative record or, in the alternative, for

remand (Docket Entry No. 15), to which defendant has responded (Docket Entry No. 19).

Upon consideration of these papers and the transcript of the administrative record (Docket

Entry No. 12), and for the reasons given below, the undersigned recommends that plaintiff's

motion be **DENIED**, and that the decision of the SSA be **AFFIRMED**.


### I.  Introduction

Plaintiff filed his DIB and SSI applications on March 31, 2004, alleging the

onset of disability as of February 14, 2003, as a result of mental illness, specifically hearing

1

voices until he started taking psychotropic medications (Tr. 51-53, 60; 251-52). His claims

were denied at both the initial and reconsideration stages of agency review (Tr. 25-28; 253-

62). Plaintiff thereafter requested and received a *de novo* hearing before an Administrative

Law Judge ("ALJ"). The hearing was held on May 18, 2006; plaintiff appeared with counsel,

and testimony was received from plaintiff and an impartial vocational expert. (Tr. 263-85)

At the conclusion of the hearing the ALJ took the case under advisement, until September

27, 2006, when she issued a written decision denying plaintiff's claims to benefits. (Tr. 14-

19) The ALJ's decision contains the following enumerated findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's schizophrenia is a "severe" impairment, based upon the requirements in the Regulations. 20 CFR 404.1520 and 416.920.

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity as set forth in the body of the decision.

7. The claimant's past relevant work as small parts assembler did not require the performance of work-related activities precluded by his residual functional capacity. 20 CFR 404.1565 and 416.965.

8. The claimant's medically determinable schizophrenia does not prevent the claimant from performing his past relevant work.

9.	The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.  20 CFR 404.1520(f) and 416.920(f).

(Tr. 18)

On October 4, 2007, the SSA's Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-8), thereby rendering that decision the final decision of the Administration.  This civil action was thereafter timely filed, and the court has jurisdiction.  42 U.S.C. §§ 405(g), 1383(c).  If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive.  Id.


## II.  Review of the Record

Plaintiff was 39 years old at the time of his May 2006 hearing, with a ninth grade education and past relevant work as a small products assembler (Tr, 266-68, 282). Diagnosed with paranoid schizophrenia, plaintiff has a history of experiencing auditory command hallucinations -- he episodically heard voices arguing with one another and telling him what to do.  Upon seeking medical help for this condition from his primary care physician, plaintiff was prescribed the antipsychotic drug Haldol, beginning some years prior to his alleged onset date.  (Tr. 111, 187)  The Haldol controlled his hallucinations; without it, he was unable to work.  (Tr. 130)  After being laid off from his factory job in 2003, he attempted to secure other employment but was unsuccessful (Tr. 271).

Records of plaintiff's treatment from  2003 through August 2004 at the Lewis Ambulatory Care Center reflect that plaintiff did not hear voices while on Haldol, and that he was doing well while taking the medication.  (Tr. 119-27)  The providers there

3

encouraged plaintiff to consult mental health professionals, but plaintiff evidently had difficulty securing such an appointment while being treated there, due to his lack of insurance.  (Tr. 119, 125)

On August 6, 2004, a consultative examination was performed by state agency psychological consultant Deborah Doineau, Ed.D. (Tr. 112-17).  At that examination, plaintiff reported that he began hearing voices in 1996 or 1997.  He confirmed that he did not hear the voices so long as he took his medication, though the medication made him feel drowsy and tired.  He still felt paranoid and distrustful of people, but these feelings were lessened by his medication.  He reported feeling depressed and having difficulty concentrating.  Dr. Doineau diagnosed schizophrenia, paranoid-type, episodic but with inter-episode residual symptoms.  She opined that plaintiff had a significant impairment in his ability to interact appropriately with others on a consistent basis.  He had a moderate-to-significant impairment in his ability to concentrate consistently, as well as in his ability to persist and keep pace.  He was capable of understanding instructions, and his memory was intact.  He was also capable of maintaining an adequate level of hygiene, using public transportation without assistance, and adapting to changes in his environment.  Dr. Doineau estimated plaintiff's global assessment of functioning ("GAF") score at 55, indicating moderate symptoms or moderate functional impairment.  (Tr. 112-17)

On August 31, 2004, plaintiff's records were reviewed by a psychological consultant with the state Disability Determination Services office, Dr. Regan.  (Tr. 144-60) Dr. Regan opined that plaintiff could complete simple and low-level detailed tasks.  He might have some difficulty, but not substantial difficulty, in interacting effectively with the public; he would have no problem interacting with supervisors and co-workers.  In addition,

4

he could adapt to infrequent changes.  (Tr. 160)

On September 21, 2004, plaintiff presented for intake at Centerstone Community Mental Health Centers (Tr. 183-88).  During that intake interview, plaintiff reported that Haldol helps eliminate the voices, but that it "blocks him in other ways" and "gives him a 'hang over,'" and that he would like to try a different medicine.  (Tr. 187, 189) Plaintiff also reported that he isolated himself to avoid problems with relationships such as he had experienced secondary to his paranoia prior to treatment.  Id.  He was started on Risperdal, but soon experienced significant side effects such as difficulty walking and talking, and an inability to comprehend or otherwise function satisfactorily (Tr. 165, 199).  In November 2004, Risperdal was discontinued and Abilify was prescribed.[1]  (Tr. 169) However, after experiencing increased paranoia on Abilify, this medication was discontinued on November 29, 2004, and Haldol was restarted in addition to a new prescription for Cogentin.[2]  (Tr. 239)  Thereafter, plaintiff reported that with the combination of Haldol and Cogentin, he finally got his medications right (Tr. 234).  In January 2005 he was reportedly doing well on his medications (Tr. 228).  In March 2005, he was doing well and staying busy mowing lawns (Tr. 220).  In July 2005, he was still noted to be doing well (Tr. 211).

A Tennessee Clinically Related Group ("CRG") assessment form was completed upon plaintiff's intake at Centerstone, on September 21, 2004, reflecting moderate

---

[1]Risperdal and Abilify are in the class of medications known as atypical antipsychotics, which work by changing the activity of certain natural substances in the brain.  Haldol is a conventional or typical antipsychotic, which works by decreasing abnormal excitement in the brain. http://www.nlm.nih.gov/medlineplus/druginformation.html

[2]Cogentin is used to treat the symptoms of Parkinson's disease, as well as to counteract similar symptoms that arise as unwanted side effects of antipsychotics such as Haldol. http://www.healthsquare.com/newrx/cog1090.htm

5

limitations due his psychosis, except for in the area of interpersonal functioning, where plaintiff was rated as markedly impaired (Tr. 208-10). Plaintiff's assigned GAF score was 50, at the upper end of the range reflecting serious symptoms or serious functional impairment. An updated CRG form was completed on July 13, 2005, reflecting no problems in any area of mental or social functioning, due to plaintiff's stability on his medications; plaintiff's GAF score remained at 50. (Tr. 205-07)

There are no further records of plaintiff's mental health treatment. A medication log generated by Centerstone in May 2006 reflects that plaintiff remained on Haldol and Cogentin, though the doses were doubled beginning in July 2005 (Tr. 109). On May 6, 2006, plaintiff's treating nurse practitioner at Centerstone, Lori James, wrote a letter for submission to the agency informing that plaintiff was compliant with his medications and his appointments at Centerstone, but that he "has been unable to maintain a full-time job and has struggled working odd jobs to make ends meet." (Tr. 250)

At his hearing on May 18, 2006, plaintiff testified to the effects of his mental illness, but stated that he was alright as long as he took his medication, though it slowed him physically (Tr. 272). He testified that he was good about taking his medication. Socially, he was able to go out with friends and shoot pool or see a movie. (Tr. 273) He lived close enough to town to walk to certain destinations, and if he needed a ride, he had a friend who took him where he needed to go (Tr. 274). He was not able to drive or operate machinery anymore due to the possible effects of the medications he takes (Tr. 66, 273-74, 276). He testified that he does not have episodes of paranoia as long as he takes his medications (Tr. 275). He testified that his medications do not have any effect on his ability to concentrate, but that they just made him tired and irritable (Tr. 277). He testified that his friend pays for

6

his medications when he is unable to do so (Tr. 278). He testified that he was cheered by being around a lot of people and engaging in activities such as sports, but was only able to do such things on the weekends, when his friend would go with him (Tr. 278-79). He reiterated that his medications control his symptoms, but make his body slow (Tr. 279). He indicated that he would be able to work if his medications allowed him to drive a car and operate machinery (Tr. 281). After plaintiff's testimony was concluded, the vocational expert testified that plaintiff could return to his past relevant work as a small products assembler if his limitations were as described by the assessment of nonexamining consultant Dr. Regan, but not if those limitations were as described by examining consultant Dr. Doineau. (Tr. 282-84)

## III. Conclusions of Law

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

7

B.  Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).  In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations.  Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

8

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

As an initial matter, plaintiff's alternative motion for remand pursuant to the sixth sentence of 42 U.S.C. § 405(g) is not well taken. Such a remand is only justified upon a showing of new and material evidence, and good cause excusing the failure to earlier produce the evidence. In order to be material, new evidence must be likely to change the

9

ALJ's decision.  Bass v. McMahon, 499 F.3d 506, 513 (6ᵗʰ Cir. 2007).  When the subject of a

sentence six remand motion is evidence which shows a deterioration in the claimant's

condition subsequent to the administrative hearing, as plaintiff's evidence here purportedly

does (see Docket Entry No. 16 at 4-5),[3] the materiality requirement is not met.  E.g., Jones v.

Comm'r of Soc. Sec., 336 F.3d 469, 478 (6ᵗʰ Cir. 2003)(quoting Wyatt v. Sec'y of Health &

Human Servs., 974 F.2d 680, 685 (6ᵗʰ Cir. 1992)).  Thus, remand pursuant to sentence six is

inappropriate here.

      Plaintiff's arguments for reversal of the ALJ's decision are founded upon his

belief that Dr. Doineau's assessment was improperly rejected in favor of the assessment of

Dr. Regan, and upon the ALJ's failure to consider the specific mental demands of plaintiff's

past relevant work or the impact of medication side effects on plaintiff's ability to meet those

demands.  The undersigned will address these arguments in turn.

      With respect to the ALJ's weighing of the medical opinions in this case, Dr.

Doineau is a consultative examiner, and as such, her opinion would not generally receive the

deference or procedural favor that is owed the opinion of a treating source, but would

generally be favored in the event of conflict with a nonexamining source.  See 20 C.F.R. §§

404.1527(d)(1)-(2), 416.927(d)(1)-(2).  However, the regulations also require a certain

amount of deference to the opinions of nonexamining state agency consultants such as Dr.

Regan, who are "experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(f).

---

[3]The treatment records described in these pages of plaintiff's brief are not before the court.  It appears that counsel inadvertently filed an invoice for professional services rendered, instead of the records from Centerstone.  In any event, as the records described in plaintiff's brief pertain to events which occurred in 2007, they are immaterial to the September 27, 2006 decision under review here.

In this case, because no treating source opinion is involved, the ALJ's weighing of the medical opinions must simply be supported by substantial evidence, with account taken of the extent to which any error may be harmless. Kornecky v. Comm'r of Soc. Sec., 167 Fed.Appx. 496, 507-08 (6ᵗʰ Cir. Feb. 9, 2006).

Here, the lone reason given for rejecting Dr. Doineau's assessment -- that her assignment of a GAF score of 55 is inconsistent with her assessment of "significant" and "moderate to significant" impairment of the ability to socially interact and to concentrate, persist, and keep pace, respectively -- is insufficient. To begin with, according to the explanation of the GAF scale in the Diagnostic and Statistical Manual of Mental Disorders, there is not necessarily any inconsistency between Dr. Doineau's functional assessment and the GAF score assigned by her. Indeed, "a score may have little or no bearing on the subject's social and occupational functioning. A 41-50 reflects the assessor's opinion that the subject has serious symptoms or serious impairment of social or occupational functioning [(e.g., no friends, unable to keep a job)]. Likewise, a 51-60 reflects the opinion that the subject has moderate symptoms or moderate impairment of social or occupational functioning [(e.g., few friends, conflicts with co-workers)]." Kornecky, 167 Fed.Appx. at 511 (emphasis in original). This use of the disjunctive in the description of the scale's domains allows a fairly wide range of symptoms and limitations to fall within any one domain, consistent with the scale's function to paint a broad-brush picture of overall psychological functioning. Id. at 503 n.7. In light of the above descriptions, it cannot be said that Dr. Doineau's assessment of a "significant impairment in [plaintiff's] ability to interact appropriately with others on a consistent basis," and a "moderate to significant impairment

11

in his ability to concentrate consistently" with "moderate to significant" limitations on persistence and pace, is inconsistent with her assignment of a GAF score of 55.

However, this analytical error is harmless, as substantial evidence otherwise supports the finding that, when plaintiff is properly medicated, moderate functional limitations at most are indicated on the record as a whole (Tr. 17). Scrutiny of the records from Lewis Ambulatory Care Center between March and August of 2004 (Tr. 119-21), the history taken by Dr. Doineau (Tr. 114), and the agency record of contact with plaintiff and his friend, Johnny Warden (Tr. 88), reveals that for the period of time beginning roughly March of 2004, until September of 2004, plaintiff had a difficult time remaining consistently medicated and securing specialized treatment due to a lack of insurance, as well as a lack of funds after the expiration of the unemployment compensation he received following his layoff from Bates Fabricating in February 2003. It appears that when his unemployment compensation stopped, plaintiff attempted to work at a company called Murray Ohio in early 2004, but was laid off from that job after two weeks. (Tr. 58, 114) After having done well on Haldol prescribed in 2003 by physicians at Lewis Ambulatory Care Center (Tr. 123-27), it appears that by March of 2004, plaintiff's financial situation had worsened to the point that he was requesting medication samples from his physicians (Tr. 119, 121) and began taking far less than the prescribed dosage of Haldol, because he could only afford a few pills at a time (Tr. 88). There are references in both the report of Dr. Doineau and the September 2004 Centerstone intake assessment to plaintiff's symptoms when he is off his medications (Tr. 115, 244), and the intake CRG reflects limitations despite his prescription for Haldol (Tr. 208-10). It appears that this difficulty with remaining fully medicated persisted until he was

12

able to secure treatment at Centerstone, through which, plaintiff testified, his medications were less costly because of a state subsidy (Tr. 277). Once admitted to treatment at Centerstone, plaintiff endured two unsuccessful attempts at treating his symptoms with different antipsychotic medications, Risperdal and Abilify, before switching back to Haldol on November 29, 2004, but this time with the addition of Cogentin, a medication which eliminates certain movement-related side effects of Haldol. Thereafter, the Centerstone reports and updated CRG form indicate that he functioned well and had no problem with his medications (Tr. 205-07, 211-38). Thus, it appears from the record that the difficulties plaintiff may have been experiencing with concentration and social interaction at the time of Dr. Doineau's assessment are likely attributable to what was at the time an inconsistent treatment regimen. Certainly, no such difficulties are noted in the record either prior to 2004, or following the re-institution of treatment with Haldol, along with the adjunct Cogentin. Accordingly, outside of this less than year-long period in 2004, it appears that plaintiff's functional limitations were no more than moderate for the remainder of the period under review here.

Plaintiff next argues that the ALJ erred in failing to make factual findings regarding the specific mental demands of plaintiff's past relevant work, as required by Social Security Ruling 82-62 in order to support the decision that plaintiff is capable of returning to such work. However, the Sixth Circuit has recognized that "[t]he regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC." Griffeth v. Comm'r of Soc. Sec., 217 Fed.Appx. 425, 429 (6th Cir. Feb. 9, 2007)(citing 20 C.F.R. § 404.1560(b)(2)). See also Wagner v. Astrue, 499

13

F.3d 842, 853-54 (8th Cir. 2007)(recognizing that regulations and rulings contemplate use of vocational experts to determine "[t]he functional demands and job duties of a claimant's past relevant occupation as generally required by employers throughout the national economy," citing Soc. Sec. Rul. 82-61 and decisions of the Fifth, Tenth, and Eleventh Circuits in accord). In this case, the ALJ elicited expert testimony as to the characterization of plaintiff's past relevant work, followed by testimony that a hypothetical individual with plaintiff's vocational profile and the limitations assessed by Dr. Regan would be able to perform such work (Tr. 282-83). This testimony provides substantial evidentiary support for the finding, at step four, that plaintiff could return to his past relevant work.

Finally, as to plaintiff's argument that the ALJ's decision is undermined by her failure to consider the functional impact of medication side effects, it is clear that the ALJ rightly discounted the significant side effects of Risperdal and Abilify due to the brief duration of their prescription. It is likewise clear that the ALJ viewed the side effects of Haldol -- which plaintiff complained left him feeling "hung over," "tired[,] and irritable" (Tr. 189, 277) -- as insignificant, due to his level of social and household activity and his report, after Cogentin was added, that his only side effect was an occasionally dry mouth (Tr. 17, 220). These findings are substantially supported. In addition, it appears that this view of plaintiff's medication side effects is supported by other substantial evidence, in the form of notations by Centerstone that plaintiff was doing well with no hypersomnolence, decrease in energy, or extrapyramidal symptoms ("EPS") (Tr. 211-12, 228-29, 234-35), the lack of any complaints of same to his providers at Lewis Ambulatory Care Center, and the fact that he was able to work prior to 2003 while taking the same dose of Haldol (indeed, was unable to

14

Case 1:07-cv-00085   Document 20   Filed 01/20/09   Page 14 of 16 PageID #: 75

work without it, Tr. 130), since at least September of 1999 (Tr. 248; Tr. 189 ("Has been on Haldol since 1998 by local PCP.")).

In sum, the undersigned finds that substantial evidence on the record as a whole supports the decision of the ALJ. It is therefore recommended that the decision be affirmed.


## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record or, in the alternative, for remand be **DENIED**, and that the decision of the SSA be **AFFIRMED**.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

Case 1:07-cv-00085   Document 20   Filed 01/20/09   Page 15 of 16 PageID #: 76

**ENTERED** this 20th day of January, 2009.

<div style="margin-left:50%">

 s/ John S. Bryant

JOHN S. BRYANT

UNITED STATES MAGISTRATE JUDGE

</div>

16